IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CV-553-FL

| | |
|---|---|
| CHRISTOPHER BENJAMIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF FAYETTEVILLE, DALE IMAN, )<br>DOUG HEWITT, TERRIE HUTAFF, )<br>GREG SCHAEFER, GERALD DIETZEN, )<br>ERNEST LOVE, WILLIE MCDONALD, )<br>STANLEY SADLER, STEVEN BULLARD, )<br>and MAYOR ANTHONY G. CHAVONNE, )<br>)<br>Defendants. ) | ORDER |

This matter comes before the court upon plaintiff's motion for reconsideration of this court's order dismissing all but one of his claims (DE # 34). Also before the court is the motion of defendant Ernest Love ("Love") seeking summary judgment on plaintiff's sole remaining claim (DE # 43). These motions have been fully briefed, and the issues raised are ripe for adjudication. For the reasons that follow, plaintiff's motion for reconsideration is denied, and defendant Love's motion for summary judgment is granted.

**STATEMENT OF THE CASE**

Plaintiff, proceeding *pro se*, initiated this action on December 28, 2009, by filing a motion for leave to proceed *in forma pauperis* and attaching a copy of his proposed complaint. The proposed complaint contained causes of action for racial and religious discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and violations

of plaintiff's First, Fifth, Sixth, and Fourteenth Amendment rights pursuant to 28 U.S.C. §§ 1983 and 1985. On frivolity review pursuant to 28 U.S.C. § 1915(e)(2), a magistrate judge recommended dismissing plaintiff's Title VII claims against the individual defendants. The court adopted that recommendation on April 15, 2010.

On May 14, 2010, defendants moved to dismiss the remaining claims pursuant to Rule 12(b)(6). By order entered August 5, 2010, the motion was granted in part and denied in part. The court found that plaintiff's Title VII claim was barred by the statute of limitations. The court further concluded that plaintiff had failed to state a Sixth Amendment claim, a double jeopardy claim under the Fifth Amendment, a § 1983 municipal liability claim, a § 1985 conspiracy claim, or a state law claim for employment discrimination. Finally, the court concluded that defendants Gerald Dietzen, Willie McDonald, Stanley Sadler, and Steven Bullard were entitled to qualified immunity on plaintiff's remaining claims. Accordingly, the court dismissed all claims except for the § 1983 claim against defendant Love for violation of plaintiff's First and Fourteenth Amendment rights.

On February 22, 2011, more than six months after the court's dismissal order, plaintiff filed a document titled "Plaintiff Appeals Judges Order to Dismiss the Following Charges." Plaintiff argues in that filing that the court erred in finding that his Title VII action was barred by the statute of limitations, that the court erred in granting qualified immunity to any of the defendants, and that the court erred in dismissing his § 1985 claim. By order entered March 8, 2011, the court notified the parties that it was treating the filing as a motion for reconsideration. Defendants timely responded in opposition to the motion, and plaintiff did not file any reply.

On March 22, 2011, defendant Love filed a motion seeking summary judgment on the remaining § 1983 claim against him. He argues that plaintiff's employment was terminated due to

2

plaintiff's poor job performance, not religious discrimination. Defendant Love also asserts that plaintiff was provided with an appropriate religious accommodation. Plaintiff responded in opposition on April 18, 2011, in a filing titled "Plaintiff Motion for Denial of Defendant Ernest Love, Etc. Motion for Summary Judgment."

## STATEMENT OF THE UNDISPUTED FACTS

The undisputed facts, in the light most favorable to plaintiff, are as follows.[1] On June 21, 2007, the City of Fayetteville (the "City") offered plaintiff employment as an Equipment Operator II (*i.e.*, a garbage truck driver). Plaintiff began working for the City a few days later, on June 25, 2007. Defendant Love was one of plaintiff's supervisors. As a new employee, plaintiff was subject to a one-year probationary period of employment.

In September 2007, plaintiff was granted leave to observe two religious holidays, Rosh Hashanah and Sukkot. On November 20, 2007, plaintiff requested to be allowed to leave work by sunset on Friday evenings so that he could observe the Sabbath. The City agreed to honor his request, informing plaintiff that it would secure a sunset schedule and ensure that his workday on Fridays ended before that time. The City noted that it would reevaluate the request if circumstances changed and that plaintiff might be required to use vacation time.

Particularly relevant to the instant suit are two instances of alleged discrimination by defendant Love. First, on November 30, 2007, defendant Love observed plaintiff socializing with

---

[1] Plaintiff disputes many of the following facts. Although plaintiff has submitted a great deal of documentary evidence, cataloged at docket entries 35 through 37, he has submitted no affidavits or other evidence which conflicts with these facts. Instead, plaintiff appears impermissibly to rely on denials in his memorandum opposing summary judgment to create an issue of material fact. See Rountree v. Fairfax Cnty. Sch. Bd., 933 F.2d 219, 223 (4th Cir. 1991) ("The arguments of counsel, absent any evidence such as sworn affidavits accompanying objections to a motion for summary judgment, fail to meet the evidentiary standard necessary to create a genuine issue of material fact."). Additionally, where plaintiff failed to respond to defendant Love's requests for admission, he is deemed to have admitted the material facts set forth herein. See Fed. R. Civ. P. 36(a)(3).

3

co-workers in the parking lot at approximately 5:15 p.m., more than an hour after he had completed work and a few minutes after sunset. Defendant Love wrote an email noting this fact, and it was placed in plaintiff's personnel file. Second, on December 28, 2007, plaintiff called defendant Love to inform him that he needed to leave early for religious reasons. Defendant dispatched another driver to complete plaintiff's route. Although he was not required to, plaintiff chose to continue working until 5:00 p.m., shortly before sunset.

During his first year of employment, plaintiff was involved in a number of accidents. For example, on July 7, 2007, plaintiff damaged a mailbox while operating his garbage truck. On September 7, 2007, he backed into a fire hydrant. On January 11, 2008, while plaintiff was driving his garbage truck, his coworker standing on the side of the truck hit his head on a stop sign. A City investigation concluded that plaintiff had been driving carelessly at the time of the accident.

Plaintiff also received a number of disciplinary warnings. On December 10, 2007, he received oral counseling for failing to complete his trash route in a timely manner and for removing items from the trash for personal use. On May 28, 2008, plaintiff received a disciplinary action for failing to properly complete a pre-trip inspection. Although he did not receive any formal disciplinary action for it, plaintiff also angrily resisted a request from another supervisor to assist with a yard waste route on April 28, 2009.

In part because of the accidents and disciplinary warnings, plaintiff received poor performance evaluations during his probationary year. On December 31, 2007, he received a performance evaluation rating his work as "must improve." This evaluation was later rescinded and replaced with another evaluation which offered more explicit instructions on how plaintiff could improve his performance.

On June 24, 2008, plaintiff received his one-year performance evaluation. He was again rated "must improve," based on his multiple vehicle accidents, poor work efficiency, and negative disposition towards his supervisors. Also on that date, plaintiff received a notice of consideration of dismissal. The recommendation was based on plaintiff's failure to perform assigned duties and carry out directions, careless and/or improper use of city equipment, and violation of established administrative policies and/or procedures. On August 8, 2008, after a pre-dismissal hearing, plaintiff's employment with the City was terminated.

## DISCUSSION

A.  Motion to Reconsider

1.  Standard of Review

The court "retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1469 (4th Cir. 1991)). "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment," Am. Canoe Ass'n, 326 F.3d at 514, but rather are "committed to the discretion of the district court," id. at 515 (citing Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 12 (1983)). Nevertheless, while not bound by Rule 59(e) or Rule 60(b), the court may look to the general principles embodied therein. See Fayetteville Investors, 936 F.2d at 1470.

2.  Analysis

The court declines to reconsider its dismissal of the other counts for a number of reasons. First, plaintiff's motion for reconsideration, filed after the close of discovery and more than six

5

months after entry of the order complained of, is deemed untimely. Cf. Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 412 n.12 (4th Cir. 2010) (noting that a party moving for relief under Rule 60(b) must make an initial showing that its motion is timely). Second, the court finds that it correctly assessed plaintiff's Title VII and § 1985 claims, as well as defendants' motion seeking qualified immunity. Where plaintiff identifies no error of law, but instead indicates "mere disagreement" with the court's ruling, he is not entitled to reconsideration. See Hutchinson v. Staton, 994 F.2d 1076, 1082 (4th Cir.1993). Finally, in light of the record evidence and the court's disposition of the remaining claim against defendant Love as set forth below, most (if not all) of the dismissed claims are almost certainly meritless, rendering the dismissed defendants' reintroduction into this case a futile endeavor.

Accordingly, where plaintiff's motion is untimely, does not identify any legal error committed by the district court, and seeks to bring meritless claims against previously dismissed defendants, it is DENIED.

B.  Motion for Summary Judgment

1.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met

its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

2    Analysis

Plaintiff's claim that defendant Love violated his rights under the First and Fourteenth Amendments stem from the alleged failure of defendant Love to grant him a religious accommodation. "To establish a prima facie religious accommodation claim, a plaintiff must establish that: (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the [defendant] of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement." Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1019 (4th Cir. 1996) (internal quotation marks omitted).[2] "If the employee establishes a prima facie case, the burden then shifts to the [defendant] to show that it could not accommodate the plaintiff's religious needs without undue hardship." Id. To satisfy this burden, the defendant must demonstrate either "(1) that [he] provided the plaintiff with a reasonable accommodation for his or her religious observances or (2) that such accommodation was not provided because it would have . . . resulted in more than a *de minimis* cost to the employer." E.E.O.C. v. Firestone Fibers & Textiles, Inc., 515 F.3d 307, 312 (4th Cir. 2008) (internal quotation marks omitted).

---

[2] In Booth v. Maryland, 327 F.3d 377, 382-83 (4th Cir. 2003), the Fourth Circuit reiterated that a municipal employee may bring a § 1983 equal protection claim in lieu of a Title VII claim. See also Campbell v. Galloway, 483 F.3d 258, 272 n.5 (4th Cir. 2007) ("Title VII does not provide the exclusive remedy for discrimination in employment, . . . and public employees are entitled to bring a § 1983 action asserting Equal Protection claims."). Although this court is unaware of any precedential Fourth Circuit decision describing the contours of a § 1983 religious accommodation claim, the court of appeals has generally used the same framework developed under Title VII in evaluating race discrimination claims under § 1983. See Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004). Accordingly, the court employs Title VII's religious accommodation framework to plaintiff's action.

In its previous order declining to dismiss the religious accommodation claim, the court relied on plaintiff's allegations that defendant Love, motivated by religious animus towards plaintiff, "circulated an email to plaintiff's other supervisors questioning the sincerity of plaintiff's religious beliefs" and later "refused to allow plaintiff to leave his route as permitted by an accommodation letter, hoping to force plaintiff to choose between his religious beliefs and keeping his job." (Order [DE # 30] at p. 8.) However, the undisputed facts now before the court do not support such allegations. Instead, the email entered into the record does not mention plaintiff's religious beliefs, but simply notes that plaintiff remained socializing with his co-workers after being permitted to end work early. Similarly, the evidence before the court indicates that defendant Love did not refuse to allow plaintiff to leave his route as permitted by the accommodation.

In short, plaintiff has met only the first two elements of a religious accommodation case: He demonstrated a bona fide religious belief that conflicts with an employment requirement, and he informed his employer of this belief. However, he has not shown that he was disciplined for failure to comply with the conflicting employment requirement. Instead, the evidence demonstrates that plaintiff was terminated (not by defendant Love, but by the City) for his multiple vehicle accidents, failure to perform his job efficiently, and negative disposition towards his supervisors. Moreover, the evidence shows that the City granted plaintiff a religious accommodation, and that defendant Love did nothing to interfere with this accommodation. Accordingly, defendant Love's motion for summary judgment is GRANTED.[3]

---

[3] Defendant Love also moves for summary judgment on what he perceives to be a standalone equal protection claim. To the extent plaintiff makes such a claim, it fails where he has not demonstrated that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). The evidence shows that plaintiff's employment was terminated for failure to comply with standards applicable to all probationary employees.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration (DE # 34) is DENIED, and defendant Love's motion for summary judgment (DE # 43) is GRANTED. Where all defendants have been dismissed or been granted summary judgment in their favor, the Clerk of Court is directed to enter judgment against plaintiff and to close this case.

SO ORDERED, this the 17th day of May, 2011.

LOUISE W. FLANAGAN
Chief United States District Court Judge